**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

LETTER OPINION

March 17, 2008

Shelley Ann Weinberg, Esq.
Shelley A. Weinberg, P.C.
17 Academy St., Suite 706
Newark, NJ 07102

Karen T. Callahan
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278

    Re: **Patel v. Commissioner of Social Security**
       **Civil Action No.: 06-4741 (JLL)**

Dear Counsel:

   Presently before the Court is Plaintiff's Complaint seeking review of the Administrative Law Judge's decision denying Plaintiff's Disability Insurance Benefits under §§ 216(i) and 223(d) of the Social Security Act. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth below, this Court remands the ALJ's decision specifically with respect to his step five analysis.

**PROCEDURAL HISTORY**

   On January 20, 2004, Plaintiff filed an application for disability insurance benefits, alleging inability to work beginning August 5, 2003. The application was denied initially and again on reconsideration. A hearing was held on March 29, 2006 before ALJ John M. Farley. An unfavorable decision was entered on April 21, 2006.

   In his opinion, ALJ Farley found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007 and that she had not engaged in any significant gainful activity at any time relevant to the proceedings. He also found that her conditions qualified as "medically determinable 'severe' impairment[s]," and stated that such impairments included "left cervical radiculopathy; L5-S1 radiculopathy; right knee internal derangement with meniscal tear." (Op. at 3). The ALJ determined that these conditions did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. §404, subpart P, Appendix 1. He further found that Plaintiff's

residual functional capacity ("RFC") permitted "the full range of sedentary work," including the ability to: lift and carry up to 10 pounds occasionally; sit for up to six hours; and stand or walk for up to two hours in an eight-hour work day. The ALJ, therefore, concluded that she was unable to do her past relevant work, but that she could participate in sedentary work, which he stated existed in "significant numbers in the national economy." (Op. at 9). Thus, he found Plaintiff not disabled within the definition of the Social Security Act. (Id.). Plaintiff now appeals the ALJ's decision pursuant to 42 U.S.C. §405(g).

## FACTUAL BACKGROUND

Plaintiff is 49 years-old and came to the United States in 1980. She received an 11th grade education in India and obtained her GED in this country. From 1981 to 1990, she worked as a machine operator. Beginning in 1991, she worked for 22 years as an order pick-up clerk, first in a hair accessories store and then for a vitamins vender. As a clerk in both stores, she stated that she frequently lifted 25 pounds. (R. at 74).

On January 31, 1999, Plaintiff was involved in a car accident. She was subsequently seen by a neurologist to treat injuries she sustained to her neck and back as a result of the accident. An MRI study conducted in June 1999 revealed three disk herniations in her cervical spine, one disk bulge and left C5/C6 radiculopathy. (R. at 265-267). An MRI study conducted by her treating physician, Dr. Parikh, in 2003 found an L3-4 herniation which impinged on her left L4 nerve root, and an L4-5 bulge. She was also diagnosed with radiculopathy and prescribed medication to treat her pain and inflammation. (R. at 58). In 2004, Plaintiff was referred to Dr. Mehta, a specialist in neuro-musculo-skeletal disorders and injuries. Dr. Mehta confirmed Dr. Parikh's diagnosis and conducted an MRI study which showed that she also had a meniscal tear in her right knee. (R. at 186). Dr. Mehta continued to treat Plaintiff through March 2006.

An examination conducted by state consultant, Dr. Vassallo, confirmed that Plaintiff has left-sided radiculopathy "most likely due to disk pathology," in addition to a muscle spasm in the lumbar region. (R. at 164). By contrast, however, state agency medical consultants reviewing the evidence adduced at previous levels of administrative review diagnosed Plaintiff as having a "normal lumbosacral spine" and found that she had "unlimited" ability to push and pull, could stand or walk for four hours a day, lift 10 pounds frequently, and 20 pounds occasionally. (R. at 167; Ex. 4F).

## LEGAL STANDARDS

### A.   Disability Determination

Under the Social Security Act, a claimant must demonstrate that she is disabled based on an inability "to engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do his previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a plaintiff is disabled. See 20 C.F.R. § 404.1520. At step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If she is not employed, then the Commissioner proceeds to step two. See 20 C.F.R. § 404.1520(a). At step two, the Commissioner must determine whether the plaintiff's impairment or combination of impairments is severe. If the impairment is not "severe," the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(c). At step three, the Commissioner must decide whether the plaintiff suffers from a listed impairment. If the plaintiff does not suffer from a listed impairment or its equivalent, then the Commissioner moves to step four. 20 C.F.R. § 404.1520(d). At step four, the Commissioner determines whether based on plaintiff's Residual Functional Capacity ("RFC") she can still do her past relevant work. If the Commissioner determines that plaintiff can no longer perform her past work, then she proceeds to step five. Finally, at step five, the burden shifts to the Commissioner to show that other work exists in significant numbers in the national economy that the plaintiff could perform given her residual functional capacity, age, education and past work experience. If the Commissioner cannot show that work exists, then the plaintiff is entitled to disability benefits.

The five-step sequential evaluation involves shifting burdens of proof. See, e.g., Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant has the burden of establishing, at step one, that she has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c)). If the claimant establishes these initial burdens, she must next demonstrate, at step three, that his impairment is equal to or exceeds one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If he makes this showing then he is presumed disabled. If he cannot show this, then at step four he must show that her residual functioning capacity ("RFC") does not permit her to return to her previous line of work. 20 C.F.R. § 404.1520(e). If the claimant cannot show this, then in the final step, step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). Note that the burden only shifts to the Commissioner at step five; throughout steps one through four the burden lies entirely with the Plaintiff. However, if the Commissioner cannot meet this burden, the Plaintiff shall receive benefits. "For each of the first four prongs, a finding of 'not disabled' will end the inquiry; otherwise the inquiry will proceed to the next level." Alexander v. Shalala, 927 F. Supp. 785, 792 n. 4 (D.N.J. 1995).

**B.     Standard of Review**

This Court must affirm the ALJ's decision if it is supported by substantial evidence. See 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is more than a "mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, when " the [ALJ] is faced with conflicting evidence, [she] must adequately explain in the record [her] reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F.Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The District Court must review the evidence in its totality. See

Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984). However, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Rather, the court must give deference to the administrative decision. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Thus, even if the record supports more than one rational interpretation, the ALJ's determination must be upheld. See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir.1986). With this framework in mind, the Court turns now to Plaintiff's arguments.

## LEGAL DISCUSSION

**A.    Disability Determination**

Plaintiff's appeal challenges, among other things,[1] the ALJ's assessment at step five of his analysis. In particular, Plaintiff argues that the ALJ's determination that Plaintiff has the residual functional capacity to perform the full range of sedentary work is not supported by substantial evidence.[2] In reviewing the ALJ's step five analysis, it appears that the ALJ gave the opinion of her primary care physician, Dr. Mehta, "little weight." (R. at 19). The ALJ lists two grounds for affording little weight to Dr. Mehta's opinion: (1) Plaintiff's conservative treatment contradicted Dr. Mehta's opinions, and (2) Dr. Mehta's findings were "dramatic" as compared to the relevant medical evidence. Based on the reason set forth below, the Court finds that neither ground is sufficiently supported by substantial evidence contained in the record.

*1.    Plaintiff's "Conservative Treatment"*

The ALJ determined that Dr. Mehta's opinions should be afforded little weight because his opinions were – according to the ALJ – expressly contradicted by Plaintiff's "conservative treatment." However, an examination of the record in its entirety reveals that Plaintiff's treatment was anything but conservative. For instance, the record indicates that Plaintiff attended physical therapy on numerous occasions throughout 2004 and 2005. (Ex. 7F). The record also demonstrates that Plaintiff saw Dr. Mehta approximately 13 times in 2004 and 18 times in 2005. Every progress note taken by Dr. Mehta during these visits was documented as arising from complaints of "severe" to "excruciating" pain in the Plaintiff's back and/or neck and sometimes in her lower extremities.  The record also confirms that Plaintiff was treated with anti-inflammatories, anti-spasmodics, pain medication and braces on her knee and back brace. (R. at 186, 192). Epidural shots were administered by Dr. Mehta to Plaintiff's knees on several occasions beginning in 2004 and continuing through the following year, at which point Dr. Mehta strongly recommended that Plaintiff undergo surgery in her lumbar spine and right knee. (R. at

---

[1]    Because the Court finds a remand appropriate in light of the ALJ's analysis at step five, the Court need not address any additional issues raised by Plaintiff.

[2]    The Court notes that Plaintiff's counsel repeatedly cites to Seventh Circuit caselaw in support of her legal arguments. In fact, not a single decision from the Third Circuit is cited in Plaintiff's brief. While Seventh Circuit caselaw certainly provides guidance to the Court, Third Circuit authority controls this Court's decision in this case.

202, 316-318).

"In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). In this case, not only does the ALJ fail to reconcile such evidence with his ultimate conclusion regarding the severity of Plaintiff's treatment, but moreover, he fails to point to any objective medical evidence indicating that Plaintiff's course of treatment was, in fact, "conservative." Thus, this Court cannot properly assess the ALJ's first ground for rejecting Dr. Mehta's opinion, at step five of his analysis.

### 2.     Dr. Mehta's "Dramatic" Findings

The ALJ's second rationale for affording little weight to Dr. Mehta's findings is his assertion that they are "dramatic" when compared to the "objective medical evidence and long-term pattern of conservative treatment." (Op. at 8). In support of this contention, the ALJ states only that other clinical examinations are more credible and "amply contradict [Dr. Mehta's] findings." (Op. at 8). However, a review of the evidence contained in the record indicates that Plaintiff's private doctors, as well as one of the state medical examiners, all agreed with Dr. Mehta in finding that Plaintiff (a) suffered from herniations in her spine, bulging disks, and radiculopathy, and (b) that she generally experienced continual back pain and limited exertional functionality. (R. at 158, 164, 169). In fact, it appears that Dr. Mehta's findings were contradicted only by one state medical consultant, Dr. Pirone.

"Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ must make clear on the record his reasons for rejecting the opinion of the treating physician." Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). In this case, the ALJ made no effort – whatsoever – to explain his conclusion that other clinical examinations were more credible than Dr. Mehta, who regularly treated Plaintiff for a period of almost two years. See Op. at 8. In doing so, the ALJ has provided this Court with no basis on which to assess his second ground for rejecting Dr. Mehta's opinion, at step five of his analysis.

### CONCLUSION

In light of the foregoing, this Court cannot properly assess the ALJ's decision to afford little or no weight to the findings of Dr. Mehta, Plaintiff's primary treating physician, because the ALJ has failed to thoroughly articulate his reasons for rejecting same. See, e.g., Brewster, 786 F.2d at 585. This Court, therefore, determines that a remand is appropriate so that the ALJ may reconsider his analysis at step five of his evaluation, in accordance with the issues discussed herein.

An appropriate Order accompanies this Letter Opinion.

/s/ Jose L. Linares  
JOSE L. LINARES, U.S.D.J.